IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES C. JONES, 334803                                                                       PLAINTIFF

VS.                                                                  CIVIL ACTION NO. 3:13cv935-LRA

DALE CASKEY, et al.                                                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff James C. Jones was an inmate at the East Mississippi Correctional Facility [EMCF] in October 2007 through February 2008, and is now incarcerated in the custody of the Mississippi Department of Corrections [MDOC] in Parchman, Mississippi. He filed this § 1983 action alleging that Defendants injected him with Haldol against his will, violating his Due Process liberty rights. Presently before the Court are the motions of Defendants for summary judgment [56 & 62]. This Court conducted an omnibus hearing on November 10, 2011, and a pretrial/settlement conference on February 6, 2014, and Plaintiff was allowed to testify under oath regarding his claims against these Defendants. Having considered the motion [62] and the competent summary judgment evidence, the Court concludes that the motion should be granted.

**Facts**

Plaintiff contends that he was transferred from the Delta Correctional Institution to EMCF on April 24, 2007. He has been diagnosed as suffering from schizophrenia and personality disorder with explosive outbursts, as well as Bipolar I, with psychosis. In October 2007, he was forcibly injected with Haldol. According to Jones, he was "totally deprived of his life, liberty, and interest..." [Complaint #1, p. 16]. Jones challenges whether he was given due process and whether the administration used the

proper procedures. He also questions whether the medical personnel possessed the requisite knowledge and expertise to make the decision to administer the drug. Jones testified that he received four injections, from November 2007 through January 2008. According to Jones, the medication altered his walking ability, causing him to be unable to exercise much or play basketball; his physical abilities "had left" him. His voice changed, and his speech started to slur. He could not wash his clothes regularly, as it took him longer to wash his clothes with his hands. He lost his appetite, and it took him longer to chew his food. His sleep patterns changed–he could not sleep at night but would sleep long periods during the day. He lost interest in activities, such as re-litigating his case. He had problems dressing. He lost excessive weight.

Jones sued 14 persons, some of whom were medical personnel at EMCF and some were security officials at EMCF. Only Defendants Patricia Hart, Teresa Shepherd, Marshall Powe, Dr. Ricardo Gillespie and Dr. Dennis Huggins were properly served and answered the Complaint.

In support of their motion, Defendants attached the omnibus hearing transcript [62-1] and the Affidavit of Sandra Atwood, R.N., with Jones's medical records [62-2]. Dr. Atwood was the Health Services Administrator for EMCF, managed the Medical Department, and was the custodian of the medical records during the applicable period.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure sets forth the requirements for summary judgment. Rule 56, in relevant part, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(c). To determine if there is a genuine issue of material fact, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The United States Supreme Court has held that entry of summary judgment is appropriate only "after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff's burden of proof is established by the elements of the substantive law, and only facts relevant to those elements will be considered for summary judgment. *Id.* at 322.

## Legal Analysis

It is established under the law that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, the necessity of security and safety in prisons is also well-established, even if the prisoner's right is fundamental. *Id.* at 223 *(*citations omitted). Because of this, the Due Process Clause permits the government to forcibly medicate a prison inmate with a serious mental illness "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.

The Court in *Harper* found that due process principles were satisfied if the following occurred before an inmate was made to take psychotropic drugs involuntarily:

1. A psychiatrist analyzed him and recommended drug treatment;

2. A hearing was held before an independent group of doctors and administrators; and,

3. The inmate received prior notice of the hearing.

*Id.* at 215-216.

The inmate should also be given an explanation of the need for medication, an opportunity to present evidence and witnesses, an opportunity to cross-examine adverse witnesses, and the assistance of an independent lay advisor who understands the issues involved. *Id.*

Accordingly, the issue in this case is whether or not Jones's involuntary injections were given in compliance with the *Harper* requirements. Defendants concede that the injections were initially involuntary, but they contend that Jones was provided his Due Process rights prior to the first treatment. They request that the complaint be dismissed with prejudice.

In support, Dr. Atwood reviewed Jones's medical records in her affidavit. Jones's primary treatment psychiatrist at EMCF was Dr. Patricia Dudley, M.D. According to Dr. Atwood, Jones's treatment team discontinued his interview on October 1, 2007, because he was not cooperating. At that time, the team recommended that

Jones be seen by the Due Process Committee established at EMCF in order that medication be required.

The Due Process was not held until four days later, October 5th, giving Jones four days notice.  On October 5, 2007, Dr. Dudley noted that Jones was "suffering from severe and abnormal mental distress due to schizophrenia" and that he was unable to function in at least two other prison settings due to the deterioration in his mental illness.  According to Dr. Dudley, Jones refused to voluntarily take the necessary medications prescribed by medical personnel, including his hypertension and mental illness medications.  The team had recommended that he be injected with Haldol every 28 days for 180 days.  The Due Process Hearing was conducted.

Besides Dr. Dudley, the other members of the team who reviewed the decision to medicate Jones were Dr. Stephen Butler, a non-treating practitioner, Dr. Tom Moore, a psychologist at EMCF, and an inmate advocate, a "Jamille Chaplari."   Dr. Dudley noted that Jones suffered from severe mental distress due to his untreated schizophrenia.  He had been assaulted (in the eye) by another inmate and was in danger due to his behavior.  He refused all assessments and interviews with his treatment team.  He refused medicines for hypertension due to his religious beliefs, reporting that he was willing to risk a stroke.  He creates conflict with authority and is suspicious and belligerent.  He preaches and "walks in the faith," accusing others of being "nonbelievers."  All agreed with the medical decision to treat Jones with Haldol.  Dr. Moore noted that due to Jones's delusions, he presents continued "unusual suffering mentally which prevents him from making rational judgments for his best interests."  Dr.

Moore agreed with the decision, and the inmate advocate noted that "due to continual suffering mentally and emotionally," he agreed. These findings confirm that Jones was a danger to himself.

After the hearing, on October 5, 2007, Jones was given the injection. It was unnecessary to compel him and he "was chanting or praying during the shot process." The Haldol was administered again on November 2, 2007, November 29, 2007, December 29, 2007, and January 25, 2008. On December 28, 2007, at his Quarterly Treatment Team Review, he stated he was compliant with his medications, including Haldol injections. He did complain of side effects from the medications, and was prescribed medication [Cogentin] to combat the effects on or about February 8, 2008. It was noted that he had great sensitivity to anti-psychotic drugs. By February 18, 2008, his treatment team saw a dramatic difference in the side effects: no further pseudo-Parkinson symptoms were noted, such as a shuffling gait, drooling, staring, dystonia, and psychomotor retardation. However, Dr. Dudley stopped the Haldol treatments and began administering Lithium instead, with the agreement of Jones.

Jones's last injection was on January 25, 2008. Over three years later, Plaintiff filed this lawsuit on March 16, 2011.

Plaintiff has not submitted any evidence rebutting these medical records or Defendants' assertions that the Due Process Committee followed the law prior to the the forced Haldol injections. His medical records, along with the affidavit of Dr. Atwood, generally confirm that the *Harper* requirements were met. The records confirm that the team attempted to explain his illness to him and the necessity of medications. Although

no witnesses were called, Plaintiff does not suggest that he was not given the opportunity to call them nor does he name any witnesses.  The records confirm that he was found to be dangerous to himself, as his illness prevented him from taking his medications for his hypertension and mental illness.  His behavior due to his mental illness caused him to be assaulted and to not be able to function in a prison setting, confirming that he was a danger to himself.

It is doubtful that every named Defendant was clearly put on notice by the law that his or her conduct would violate Plaintiff's constitutional rights in this situation, particularly when a Due Process hearing was conducted prior to the injection.  Even if the *Harper* requirements were not strictly complied with by Defendants herein, qualified immunity would protect each individual Defendant.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 457 U.S. 335, 341 (1986).  No deliberate indifference could be established as to the individual Defendants in this case, and many of the individuals had no role whatsoever in the decision to medicate Jones.

The Court in *Harper* noted that an inmate's interest were better served by allowing medical professionals to make the decision to forcibly medicate, rather than judges.  *Harper*, 494 U.S. at 231.  This Court agrees.  "[T]he decision, if made by a

7

professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 323 (1982). There is no assertion that the decision was not made based upon standard accepted protocol for schizophrenia treatment. As long as procedures were followed which satisfy the requirements of Due Process, no liability can be shown on the part of any of the named Defendants. The Court finds that the medical records confirm that at least the minimum Due Process requirements were met in Jones's case. *See also Bagley v. Scott,* No. 97-40180, 132 F.3d 1455, 1997 WL 802857 (5th Cir. Nov. 19, 1997) (evidence not clear as to whether inmate refused treatment, triggering *Harper* requirements); *Irvin v. Casasanta*, No. 94-10722, 41 F.3d 661, 1994 WL 684567 at *3-4 (5th Cir. Nov. 15, 1994) (inmate's case dismissed as frivolous under *Harper*); *Pugh v. Collins,* No. 96-40306, 103 F.3d 124 (5th Cir. Nov. 21, 1996) (Due Process protections not implicated if there is no refusal or objection duly communicated to prison officials regarding ingestion or injection of pychotropic drugs); *Wakefield v. Bortman*, No. C 03-2870, 2004 WL 1811201 at *5 (N.D. Ca. Aug. 10, 2004) (*Harper* requirements may not apply in emergency situations; qualified immunity protects defendant doctors who were not put on notice that their conduct would be clearly unlawful).

Plaintiff also generally complains that his medical care at EMCF was constitutionally deficient. However, the medical records confirm that Jones was provided with regular medical care; he simply disagreed with the care provided. In

order to state a claim under § 1983, he must show evidence of conduct on the part of these Defendants which amounted to deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff has shown no evidence that any Defendant knew of and disregarded an excessive risk to his health or safety.

Defendants have also alleged that Plaintiff's complaint should be dismissed under the applicable 3-year statute of limitations contained in Miss. Code § 15-1-49. Because the evidence is not entirely clear as to whether Plaintiff claims that the statute was tolled for a portion of that time due to his mental illness, the Court shall base its decision to dismiss the case on the merits rather than timeliness.

Therefore, it is hereby ordered that Defendants' motion [62] is granted as to all of Plaintiff's claims, and Defendants are hereby dismissed. Defendants' motion based on the statute of limitations [56] is dismissed as moot. Final Judgment shall be entered in favor of all Defendants on this date, and the Complaint is dismissed with prejudice.

So ordered, this the 27th day of March, 2014.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE